# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | No. 07 CR 448 |
| ) | Judge Blanche M. Manning |
| FRANCISCO MENDOZA-CASTELLANOS. ) | |
| ) | |

## MEMORANDUM AND ORDER

Defendant Francisco Mendoza-Castellanos pleaded guilty to one count of illegal reentry of a deported alien. *See* 8 U.S.C. § 1326(a) and (b)(2). He is before the court for sentencing. For the reasons stated below and in open court, the court sentences him to a term of incarceration of 24 months.

## BACKGROUND

The United States is the only home that Francisco Mendoza-Castellanos has ever known. His parents brought him here with them from Mexico when he was just three years old. As Mendoza grew, he unfortunately began getting into trouble. By age 12, he and a brother were members of the Latin King street gang. By age 20, he pled guilty to raping a woman (though he now claims that the victim was his girlfriend and that he pled guilty only to avoid testifying against fellow gang members who had actually committed the rape).

Because Mendoza never became a citizen, he was deported in 1993 after completing his sentence for the rape conviction. In 1999 he returned to the United States[1] without permission

---

[1] According to Mendoza's Presentence Investigation Report, he was deported in 1993 and did not return until his reentry in 1999. However, it appears that Mendoza may have reentered an additional time before 1999. According to the PSR, he was arrested in Waukegan, Illinois for possessing marijuana in 1994—a time he was supposedly out of the country. The court notes, however, that its calculation of an appropriate sentence would be the same whether Mendoza was in or out of the country in 1994.

and was eventually caught and deported by Immigration and Customs Enforcement in 2004. He reentered again in 2005. On June 24, 2007, a federal agent received a tip about Mendoza. Specifically, someone told the agent that a sex offender who had previously been deported had returned. Agents subsequently questioned Mendoza, which led to the instant proceeding.

Mendoza has remained relatively crime free since his rape conviction at age 20, except for a conviction for driving under the influence in 2004 and the instant offense. Now at age 36, he is a husband and father to his 15-year-old daughter from a previous relationship. He has also become a doting father-figure to his wife's two daughters, ages 7 and 6.

His opportunities for work have been limited by his illegal status, which is reflected in his sketchy work history as reported in his Presentence Investigation Report. However, the PSR appears not to tell the whole story. According to character reference letters submitted on Mendoza's behalf, he is a hard worker praised by customers for whom he does landscaping, as well as family members for whom he cares. Especially touching is a letter from his ten-year-old niece whose father was never around and who relied instead on Mendoza for help and support.

## ANALYSIS

**I.      Sentencing Guidelines**

In order to determine the most appropriate sentence for Mendoza, the court must begin by calculating his sentencing range under the Sentencing Guidelines. The parties agree with the probation officer's calculations set out in the defendant's PSR, as does the court. Accordingly, the court adopts the calculation in the PSR. Specifically, the court finds that the base offense level for a violation of 8 U.S.C. § 1326(a) and (b)(2) is 8. *See* U.S.S.G. § 2L1.2(a). Because the defendant was previously deported after being convicted of a felony (criminal sexual assault), his

offense level is increased by 16, resulting in an adjusted offense level of 24. He is entitled to a 3-level reduction for acceptance of responsibility and timely notification, *see* U.S.S.G. § 3E1.1(a) & (b), resulting in a total offense level of 21. His criminal history category is III, based upon three criminal history points for the criminal sexual assault, and one point for driving under the influence. The resulting sentencing range under the Sentencing Guidelines is 46-57 months.

## II.     Sentencing Factors of § 3553(a)

In addition to the sentencing range calculated under the Guidelines, the court must also take into account the sentencing factors set forth in 18 U.S.C. § 3553(a). Under § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are:

> (1)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
>
> (2)   to create adequate deterrence to crimes by others;
>
> (3)   to protect the public from future crimes by the defendant; and
>
> (4)   to provide the defendant with necessary treatment and training.

*See* 18 U.S.C. § 3553(a)(2). To those ends, the court must take into account the following factors:

> (1)   the nature and circumstances of the offense;
>
> (2)   the history and characteristics of the defendant;
>
> (3)   the kinds of sentences available;
>
> (4)   the sentencing range calculated under the Sentencing Guidelines;
>
> (5)   pertinent policy statements set forth in the Sentencing Guidelines;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records or who committed similar crimes; and

(7) the need to provide restitution to victims of the defendant's offense.

See 18 U.S.C. § 3553(a)(1-7).

## A. History and Characteristics of the Defendant

Although he committed the serious crime of rape at age 20, since then Mendoza seems to have reformed himself. He has turned his back on gangs and a life on the street. He has led a relatively crime-free life. And he worked when he was able. He has also provided critical help to family members in need, especially a niece and two step-daughters who depend upon him as the only father figure they know.

Mendoza faces deportation to Mexico after serving his sentence in this case. The unique circumstance of his situation—that the United States is the only home he has known even though he is not a citizen—is the result of decisions made by his parents, not him. As a consequence, his sentence and deportation will be harsher on him than on deportable aliens who have not lived here all their lives.

Although illegal reentry is a very serious crime—especially when committed by a convicted felon like Mendoza—the court is not free to ignore the reason for his return. According to the character reference letters the court has carefully reviewed, Mendoza returned to reunite with the only family he has, all of whom are in the United States. The court does not condone Mendoza's return, but at the same time recognizes that Mendoza had an innate drive to return to the only home he has known.

The court also notes that Mendoza provides for two young children whose mother has committed to relocating to Mexico once he is released and deported. The children would benefit from being reunited with their step-father and being exposed to the mostly positive attributes he has exhibited since entering their lives.

The court finds that these aspects of Mendoza's history and character counsel toward a sentence lower than the range provided under the Sentencing Guidelines.

### B.     Need to Protect Public from Future Crimes

Mendoza has demonstrated that he has made great strides towards rehabilitation by shunning gang life and remaining mostly crime-free, the notable exceptions being a DUI and the instant offense. The court also notes that, for the first time, Mendoza has been subjected to criminal proceedings as a result of his reentry (his reentry in 1999 was handled by ICE). Based upon the court's careful observation of Mendoza at sentencing including his demeanor while making statements in mitigation, the court believes that this criminal proceeding has made a much greater impression upon him than the administrative deportation proceedings in 2005. As a result, the court perceives some, but not a tremendous, need to protect the community from future reentries or other crimes by the defendant. Furthermore, the court believes that Mendoza is also much less likely to reenter based upon his wife's commitment to move to Mexico upon Mendoza's deportation.

### C.     Need for Just Punishment

Despite the fact that Mendoza has made great strides towards rehabilitation, the crimes of his youth continue to haunt him. The consequence of his sexual assault conviction has already dealt him a tremendous blow, as he will never again be able to live in the only country that he has

ever called home.  Nevertheless, the fact of that earlier conviction greatly exacerbates his sentencing range for the instant offense, raising his base offense level of 8 by an additional 16 levels.  As a result, the court believes in its discretion that a sentence within Mendoza's Guidelines range would be overly harsh because the range is driven primarily by a crime he committed at age 20, for which he is already paying a tremendous toll.

## CONCLUSION

The court has given great thought to determining a sentence for Mendoza that is sufficient, but not greater than necessary, to meet the goals of sentencing set forth above.  In its discretion, it determines that a sentence within Mendoza's Guidelines range would be overly harsh, and that an appropriate sentence is 24 months.  That sentence is sufficient to deter Mendoza and others from committing similar offenses, but also takes into account the unique circumstance of his case, specifically, that he faces deportation from the only home he has ever known.

ENTER:

DATE:  January 22, 2008

_Blanche M. Manning_
Blanche M. Manning
United States District Judge